**ALICIA LEDUC MONTGOMERY, OSB 173963**
Email: alicia@leducmontgomery.com
**LEDUC MONTGOMERY LLC**
2210 W Main Street, Suite 107 #328
Battle Ground, Washington 98604
Telephone: (704) 702-6934
www.leducmontgomery.com

     Attorneys for Plaintiff Amy Bender

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **AMY BENDER,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**OREGON DEPARTMENT OF CORRECTIONS, a state agency, DAVID EWELL, an individual, ROBERT COOLEY, an individual, AMY BREEN, an individual, CHAD NAUGLE, an individual, ERIN YONALLY, an individual, PETER BRUNS, an individual, NINA ERVIN, an individual, CAYLEE ANDERO, an individual, LAUREN PREWITT, an individual, DEENA LOZIER, an individual, LORI SCHAIN, an individual, and DOES 1-5, individuals,**<br><br>**Defendants.** | Case No. 24-535<br><br>**COMPLAINT**<br><br>Violations of 42 U.S.C. § 1983 – 8th Amendment Failure to Protect, Failure to Provide Adequate Medical Care; Violations of Americans with Disabilities Act and § 504 of the Rehabilitation Act; Professional Negligence; Negligence<br><br>DEMAND FOR JURY TRIAL |

     1.    This lawsuit concerns the the Oregon Department of Corrections' ("ODOC")

failure to protect or provide medical care to Plaintiff Amy Bender, a former adult in custody

("AIC"), who alerted ODOC staff she was being targeted for harm by AICs and asked to be

moved for safety, but was repeatedly ignored. She was then poisoned by AICs and hospitalized.

PAGE 1 – **COMPLAINT**

Plaintiff brings this action for damages and attorney's fees and costs to redress the violations of her constitutional and statutory and state law rights caused by Defendants' failure to protect her from harm, failure to provide adequate medical care, and failure to accommodate Plaintiff's medical disability after she was poisoned while in custody at Coffee Creek Correctional Facility.

## JURISDICTION

2.      This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. §§ 1983 and 12101 *et seq*., 29 U.S.C. § 701 *et seq*., and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

3.      Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon law because the state claims arise from the same nucleus of operative facts as the federal claims.

## VENUE

4.      Venue is proper in the District of Oregon because the events giving rise to the claims occurred in this district, and on information and belief, all Defendants reside in this district.  28 U.S.C. §1391(b).

5.      Venue is proper in the Portland District of the District of Oregon because the events giving rise to the claims occurred in Clackamas County which is located in the Portland District.

## PARTIES

6.      Plaintiff Amy Bender is an adult who, at all times relevant, was an AIC at Coffee Creek Correctional Facility ("CCCF") in Wilsonville, Clackamas County, Oregon. All of the

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

events giving rise to the claims in this case occurred while Plaintiff was incarcerated at CCCF. Plaintiff was released in 2023 and currently resides in Klamath County, Oregon.

7.     Defendant Oregon Department of Corrections, an agency of the state of Oregon, is the state agency charged with custody of adults sentenced to prison for more than 12 months, with its principal place of business in Marion County, Oregon.

8.     Defendant David Ewell is an employee of the Oregon Department of Corrections who, at all times relevant, was employed as a Lieutenant at CCCF in Clackamas County, Oregon. All of the events giving rise to the claims in this case occurred while Defendant Ewell was employed at CCCF. Defendant Ewell is sued in an individual capacity and at all times relevant was acting under color of state law.

9.     Defendant Robert Cooley is an employee of the Oregon Department of Corrections who, at all times relevant, was employed as a Sergeant at CCCF in Clackamas County, Oregon. All of the events giving rise to the claims in this case occurred while Defendant Cooley was employed at CCCF. Defendant Cooley is sued in an individual capacity and at all times relevant was acting under color of state law.

10.     Defendant Amy Breen is an employee of the Oregon Department of Corrections who, at all times relevant, was employed as a Hearing Officer at CCCF in Clackamas County, Oregon. All of the events giving rise to the claims in this case occurred while Defendant Breen was employed at CCCF. Defendant Breen is sued in an individual capacity and at all times relevant was acting under color of state law.

11.     Defendant Chad Naugle is an employee of the Oregon Department of Corrections who, at all times relevant, was employed as an Assistant Superintendent at CCCF in Clackamas

PAGE 3 – **COMPLAINT**

County, Oregon. All of the events giving rise to the claims in this case occurred while Defendant Naugle was employed at CCCF. Defendant Naugle is sued in an individual capacity and at all times relevant was acting under color of state law.

12.    Defendant Erin Yonally is an employee of the Oregon Department of Corrections who, at all times relevant, was employed as at CCCF in Clackamas County, Oregon. All of the events giving rise to the claims in this case occurred while Defendant Yonally was employed at CCCF. Defendant Yonally is sued in an individual capacity and at all times relevant was acting under color of state law.

13.    Defendant Peter Bruns is an employee of the Oregon Department of Corrections who, at all times relevant, was employed as a Captain at CCCF in Clackamas County, Oregon. All of the events giving rise to the claims in this case occurred while Defendant Bruns was employed at CCCF. Defendant Bruns is sued in an individual capacity and at all times relevant was acting under color of state law.

14.    Defendant Nina Ervin is an employee of the Oregon Department of Corrections who, at all times relevant, was employed as a Captain at CCCF in Clackamas County, Oregon. All of the events giving rise to the claims in this case occurred while Defendant Ervin was employed at CCCF. Defendant Ervin is sued in an individual capacity and at all times relevant was acting under color of state law.

15.    Defendant Caylee Andero is an employee of the Oregon Department of Corrections who, at all times relevant, was employed as a Registered Nurse at CCCF in Clackamas County, Oregon. All of the events giving rise to the claims in this case occurred while

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

Defendant Andero was employed at CCCF. Defendant Andero is sued in an individual capacity and at all times relevant was acting under color of state law.

16.     Defendant Lauren Prewitt is an employee of the Oregon Department of Corrections who, at all times relevant, was employed as a doctor at CCCF in Clackamas County, Oregon. All of the events giving rise to the claims in this case occurred while Defendant Prewitt was employed at CCCF. Defendant Prewitt is sued in an individual capacity and at all times relevant was acting under color of state law.

17.     Defendant Deena Lozier is an employee of the Oregon Department of Corrections who, at all times relevant, was employed as a doctor at CCCF in Clackamas County, Oregon. All of the events giving rise to the claims in this case occurred while Defendant Lozier was employed at CCCF. Defendant Lozier is sued in an individual capacity and at all times relevant was acting under color of state law.

18.     Defendant Lori Schain is an employee of the Oregon Department of Corrections who, at all times relevant, was employed as a Registered Nurse at CCCF in Clackamas County, Oregon. All of the events giving rise to the claims in this case occurred while Defendant Shain was employed at CCCF. Defendant Schain is sued in an individual capacity and at all times relevant was acting under color of state law.

19.     Defendants Does 1-5 are current and/or former employees of the State of Oregon working for ODOC, whose identities and/or roles in allegations pled in this Complaint are currently unknown to Plaintiffs. On information and belief, Defendants Does 1-5 were involved in violating Plaintiff's constitutional, statutory, and common law rights while acting in their

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

capacity as ODOC employees at CCCF. Defendants Does 1-5 are sued in their individua

capacity and on information and belief, at all times relevant were acting under color of state law.

## FACTUAL ALLEGATIONS

**A.    Plaintiff Was Diagnosed with Disabling Medical Condition Prior to ODOC Custody**

20.    Plaintiff Amy Bender is an adult who, at all times relevant to this litigation, was a

prisoner in ODOC custody housed at CCCF, primarily in Unit 400. She was released from

ODOC custody in January 2023.

21.    Plaintiff was diagnosed with Hirschsprung's disease as a child. Hirschsprung's

disease causes problems with bowel movements and pain due to missing nerve cells in the colon.

Plaintiff has undergone surgery for Hirschsprung's disease which resulted in the removal of

approximately half of her colon and part of her intestines. Plaintiff has visible scars on her

abdomen related to her Hirschsprung's disease surgery and condition. Living with

Hirschsprung's disease substantially limits Plaintiff's major life activities including the function

of her colon and digestive system.

22.    Plaintiff was suffering from Hirschsprung's disease at the time she entered ODOC

custody. ODOC staff was or should have been aware of Plaintiff's medical condition throughout

her incarceration in ODOC custody.

**B.    Plaintiff Repeatedly Alerted ODOC Defendants She Feared for Her Safety**

**Due to Escalating Harassment From Aggressive AICs And Requested To Be Moved**

23.    At all times relevant, Defendant Ewell was a lieutenant at CCCF and oversaw

Unit 400. As lieutenant, Defendant Ewell was responsible for responding to inmate grievances in

Unit 400.

PAGE 6 –**COMPLAINT**

24.     On or around early 2022, Plaintiff began experiencing harassment and discrimination from AIC Sarah Rodgers and other AICs in Unit 400. The harassment and discrimination included taunting and the restriction to laundry facilities.

25.     AICs Rodgers and Kohl knew of Plaintiff's Hirschsprung's disease disabling medical condition. AIC Rodgers worked in the CCCF laundry for Plaintiff's unit. AIC Rodgers harassed and discriminated against Plaintiff, including but not limited to, by preventing Plaintiff from washing her clothes which would become soiled due to the effects of living with Hirschsprung's disease.

26.     Other AICs, including but not limited to AICs Marie Ramos and Kellie Ann Edmondson, saw Plaintiff being harassed and discriminated against by AICs Rodgers and Kohl. It was widely known within the CCCF Unit 400 that AICs Rodgers and Kohl were "mean girls" and were targeting Plaintiff with stalking, bullying, and abuse.

27.     On or about March 28, 2022 at approximately 3:00 PM, another AIC on the unit saw AIC Rodgers inside Plaintiff's bunk reading through Plaintiff's private kytes and medical records on Plaintiff's bed. AIC Rodgers did not have permission to access Plaintiff's personal sleeping space or Plaintiff's private medical records and files. Both Plaintiff and the AIC witness verbally reported the incident to Defendant Ewell. Plaintiff told Defendant Ewell that she feared for her safety and did not feel safe due on the unit due to the harassment she was experiencing from AIC Rodgers and Rodger's AIC associates on the unit.

28.     Also on or about March 28, 2022, Plaintiff reported AIC Rodgers' stalking and unauthorized review of Plaintiff's medical records and files to ODOC counselor Adrian Wulff.

PAGE 7 – **COMPLAINT**

29.    On or about March 28, 2022, ODOC Counselor Wulff emailed Defendant Ewell and ODOC medica staff Scott Haynes, PMHNP, alerting that Plaintiff was experiencing "conflict with several people around her bunk and is trying to move." Counselor Wulff was "concern[ed]" that the conflict with the AIC "targeting" Plaintiff would "escalate" and stated about Plaintiff "I believe she has an incentive move and has talked to you as well."

30.    On April 14, 2022, Office R. Lamb submitted a misconduct report against Plaintiff for contraband, including a bottle of laxative Enulose pills. The report notes that Plaintiff did not have a prescription for Enulose. Defendant Ewell reviewed and signed the misconduct report and signed it on the same day.

31.    The laxative medication found near Plaintiff's bunk did not belong to Plaintiff. Plaintiff did not have a prescription for laxative medication, did not place it in her bunk, and would not have sought access to laxative medication because it could negatively impact her Hirschsprung's disease condition.

32.    On information and belief, the laxative medication contraband was planted on Plaintiff's bunk by AIC Rodgers and Rodgers' associates who were targeting Plaintiff for harassment and knew of Plaintiff's medical vulnerability due to her Hirschsprung's disease disability.

33.    On April 27, 2022, Defendant Breen held a Disciplinary Review hearing regarding the contraband found in Plaintiff's bunk. Plaintiff testified that another AIC put the medication in her bunk. Plaintiff testified that she thought it was the same AIC who read her kytes in March. She testified that she could not take laxatives due to her pre-existing health condition.

PAGE 8 – **COMPLAINT**

34.     On information and belief, to Plaintiff's knowledge no ODOC employee investigated Plaintiff's testimonial report during the disciplinary hearing that other AICs were targeting her for harassment in a manner that implicated Plaintiff's medical disability condition.

**C.  Plaintiff Was Poisoned By AIC Rodgers and Other AICs on Her Unit and Experienced Physical Injuries as a Result**

35.     In May 2022, Plaintiff continued to experience harassment and targeting by AIC Rodgers and Rodgers' associates.

36.     During this time, Plaintiff made verbal requests to be moved to a different bunk due to fear for her safety.

37.     On May 2, 2022, Plaintiff felt sick and was experiencing extreme pain in her abdomen. The pain and sickness grew worse and persisted to the next day.

38.     On May 3, 2022, Plaintiff's symptoms were serious such that ODOC transported Plaintiff to the hospital. Plaintiff was experiencing a blockage of her bowels.

39.     Over the next week, Plaintiff experienced pain in her abdomen and bouts of loose stool.

40.     On or about May 9, 2022, Plaintiff sent ODOC officers a written kyte requesting a housing move from her bunk, due to her safety concerns about the ongoing and escalating harassment from AIC Rodgers and Rodgers' associates.

41.     ODOC video shows that on May 12, 2022, between 6:30pm and 8:00pm, AICs Rodgers and Kohl entered the bunk area next to Plaintiff's bed and crushed up medication and put it in the pitcher of Kool-Aid that Plaintiff kept at the side of her bed, without Plaintiff's knowledge.

PAGE 9 – **COMPLAINT**

42.     Plaintiff drank the Kool-Aid poison later that evening. Plaintiff noticed the Kool-Aid tasted differently. That night, Plaintiff was unable to sleep and had uncontrollable bowel movements which soiled her garments.

43.     On May 13, 2022, Plaintiff noticed her usual Kool-Aid tasted differently again. Plaintiff washed the pitcher the Kool-Aid was kept in. She had another uncontrollable bowel movement accident and felt very dizzy.

44.     On May 14, 2022, Plaintiff cleaned the pitcher again. Plaintiff's bunkmate, AIC Crysta McNair, watched Plaintiff investigating the pitcher and commented "Wow, maybe you should wash it out I guess." That day, Plaintiff felt very ill. She remained in bed and had to stay close to the bathroom because she was having uncontrollable bowel movement accidents.

45.     On May 15, 2022, Plaintiff woke up and found that her Kool-Aid pitcher was empty, even though she had not consumed all of the Kool-Aid during night.

46.     Plaintiff's clothes were soiled from the repeated bowel movement accidents. She took her soiled garments to the laundry facility.

47.     AIC Rodgers was the laundry room contact for Plaintiff's unit. AIC Rodgers refused to let Plaintiff wash her soiled clothes.

48.     On May 16, 2022, AIC McNair and AIC Allie Allard told AIC Krista Hawkinson that they and others had been putting laxatives in Plaintiff's pitcher. AICs McNair and Allard laughed about causing Plaintiff to "shit herself."

49.     AIC Hawkinson immediately told AIC Marie Ramos about AICs McNair and Allard's confessions of intentionally poisoning Plaintiff. AIC Hawkinson knew AIC Ramos was Plaintiff's friend.

PAGE 10 – **COMPLAINT**

50.    AIC Ramos told Plaintiff about the conversation and AICs McNair and Allard's admissions they had been poisoning Plaintiff's Kool-Aid.

51.    On May 16, 2022, Plaintiff and AIC Ramos both reported the admissions and incident to Counselor Wulff.

52.    After learning about the reported poisoning from Plaintiff and AIC Ramos, Counselor Wulff emailed Defendant Ewell and Patrick Foreman about the poisoning because it was a security issue. Counselor Wulff urged Defendant Ewell to take this issue seriously.

53.    Defendant Ewell responded five minutes later stating that other AICs had been sending him kytes requesting Plaintiff be moved to a different location because of Plaintiff's "hygiene" and "constantly leaching off other AICs." Defendant Ewell stated he would not investigate Plaintiff's complaint of ongoing poisoning until the next day.

54.    On May 17, 2022, Plaintiff again requested to be moved to a safer location.

55.    On May 17, 2022, Counselor Wulff emailed ODOC Counselor Joyce Duval and ODOC Contractor Judy Rose to inform them about the poisoning. Counselor Duval responded, stating she believed Plaintiff had been harassed by other AICs. Counselor Duval went on to say "I do remember one thing Ewell said was he told Bender to stop asking others for things. Something similar happened some time ago with a client in treatment, and we learned that people were actually putting things in her drink, and they were held accountable."

56.    On May 18, 2022, Plaintiff submitted a Move Request Form.

57.    On May 18, 2022, Defendants Ewell and Cooley called Plaintiff to their office because they had received multiple kytes from other AICs on her unit regarding Plaintiff. During the meeting Defendants Ewell and Cooley berated Plaintiff, called her "disgusting," stated that

PAGE 11 – **COMPLAINT**

LeDuc Montgomery LLC
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

she "crapped her pants," and that she was not doing her job. They threatened to search Plaintiff. Plaintiff explained that the AICs who sent the kytes about her were the same AICs who had poisoned her. Defendants Ewell and Cooley told Plaintiff "we're here to talk about you being the problem."

58.     After her meeting with Defendants Ewell and Cooley on May 18, 2022, Plaintiff reported what happened during the meeting to her Unit Officer, Officer Karin De La O. Plaintiff also expressed distress over the poisoning. Office De La O reported the poisoning to ODOC Corporal Adan Bataz. Corporal Bataz reviewed video footage of Plaintiff's bunk from May 12, 2022 to May 15, 2022 and discovered AIC Rodgers and AIC Kohl crushing medication and putting it in Plaintiff's pitcher. The footage showed Plaintiff thereafter having bowel movement accidents, going to the bathroom, and appearing to be dizzy.

59.     Plaintiff believed her bunkmate, AIC McNair, was involved in the poisoning or knew it was happening and she did not feel safe being in the same bunk as AIC McNair.

60.     On May 18, 2022, Plaintiff sent a kyte to Defendants Ewell, Yonally, and Bruns explaining that because they did not move her to a safer location when she asked, she had been poisoned. Plaintiff explained she was unable to sleep and very upset due to being poisoning.

61.     On May 18, 2022, Plaintiff sent a kyte to ODOC Medical explaining she was having bouts of diarrhea and bowel movement accidents. Plaintiff requested laundry access as a disability accommodation because the laundry room workers were not washing her soiled clothes.

62.     On May 22, 2022, Plaintiff sent two kytes to ODOC Medical. In one kyte, Plaintiff explained that she was dizzy, panicked, not sleeping well, and experiencing diarrhea. In

PAGE 12 – **COMPLAINT**

the second kyte, Plaintiff requested a full CBC blood workup because she had been poisoned and was worried about the health effects. Plaintiff again requested laundry access disability accommodations. Medical responded to both kytes on that day and stated that Plaintiff was scheduled for appointments.

63.    On May 23, 2022, Plaintiff sent a kyte to Defendant Naugle stating that Defendant Ewell was not responding to her requests to move or to any of the other kytes she sent. Defendant Naugle responded the next day and told Plaintiff he would "let him know. thx."

64.    On May 23, 2022, Defendant Naugle emailed Defendant Ewell and asked if Defendant Ewell was investigating the incident because it is "a crime what the two AICs did with the putting that substance in another AICs drink." The same email chain noted that ODOC staff had previously received several kytes from "those mentioned AICs trying to get [Plaintiff] moved off the unit."

65.    On May 24, 2022, Plaintiff was unable to sleep, was in constant abdominal pain, and was not able to eat.

66.    On May 25, 2022, Plaintiff was taken to Legacy Meridian Park Medical Center due to extreme abdominal pain. Plaintiff was taken back to CCCF after she had a bowel movement. Her condition did not entirely resolve.

67.    On May 27, 2022 at approximately 2:00 AM, Plaintiff woke from her sleep experiencing extreme pressure in her abdomen. She continued experiencing extreme abdominal pain after attempting to eat breakfast. Plaintiff's pain and medical condition did not improve and she was transported Plaintiff to St. Vincent DePaul Hospital. Plaintiff was hospitalized for four days. While hospitalized she experienced abdominal pain so severe she was doubled over and

PAGE 13 – **COMPLAINT**

could barely walk. Plaintiff was diagnosed with a full blockage in her intestines. Plaintiff was administered pain medication. Plaintiff was shackled during the hospital stay and the male guards had to frequently unshackle and re-shackle her when she needed to go to the bathroom. Plaintiff experienced embarrassment and humiliation in addition to the pain she was enduring. Plaintiff passed the blockage and returned to CCCF on May 31, 2022.

### D. ODOC Ignores Plaintiff's Health and Safety Concerns After She Was Poisoned

68.     On June 1, 2022, Plaintiff submitted a Grievance Form on the property room because her hat and headphones were missing when she returned from the hospital. ODOC staff had not properly secured her belongings when she was taken to the hospital.

69.     On June 1, 2022, Plaintiff was still experiencing abdominal pain. CCCF Medical staff refused to provide Plaintiff any pain medication. Plaintiff submitted a Grievance Form on CCCF Medical asking for pain medication because she was in a "great deal of pain still."

70.     On June 2, 2022, Plaintiff met with Defendant Prewitt for treatment regarding Plaintiff's ongoing pain and suffering. Defendant Prewitt refused to prescribe Plaintiff pain medication even though Plaintiff was continuing to experience significant pain after having been poisoned and hospitalized.

71.     On June 3, 2022, Plaintiff submitted a Move Request Form due to ongoing safety concerns and medical impacts.

72.     On June 3, 2022, Plaintiff sent a kyte to Captain Ervin requesting to be moved to "Cadalac" bunks because she did not feel safe being in the same unit as AIC McNair.

73.     On June 4, 2022, Plaintiff asked to see ODOC Medical due to having "huge pain" and uncontrollable bowel movements.

PAGE 14 – **COMPLAINT**

74.    On June 5, 2022, Plaintiff asked to be seen at ODOC Medical due to being in pain. Plaintiff sent a kyte to ODOC Medical asking to be seen because she was "having huge pain in my abdominal." Medical responded that Plaintiff would be seen on June 6, 2022.

75.    On June 6, 2022, Plaintiff was seen by ODOC Medical and was finally given naproxen for her pain.

76.    On June 7, 2022, Plaintiff saw Dr. Judy Rose. Dr. Rose wrote in her notes that Plaintiff was having night terrors following her poisoning.

77.    On June 8, 2022, Plaintiff sent a Kyte to Defendant Ewell explaining that being housed so close to AIC McNair was causing her to have panic attacks and anxiety.

78.    On June 10, 2022, Defendant Ewell dismissed Plaintiff's request and asserted Plaintiff did not need to be moved because her bunk was "very close to the officer station" despite ODOC and Defendant Ewell having failed to protect Plaintiff from being poisoned in that bunk after raisings safety and security concerns in the past.

79.    On June 15 2022, ODOC employee James Baker acknowledged Plaintiff was experiencing "issues stemming from the assault committed against her."

80.    On July 20, 2022, Defendant Ewell finally responded to Plaintiff's June 3 move request denying her move request and stating that he understood Plaintiff's concern but alleged there were no bunks available.

81.    On June 21, 2022, Counselor Wulff acknowledged Plaintiff was experiencing side effects and continued conflict with her bunkmate.

82.    On June 21, 2022, Counselor Wulff emailed Defendant Naugle and ODOC Staff Leonard Dunn asking for them to update Plaintiff about the investigation into her poisoning.

PAGE 15 –**COMPLAINT**

Defendant Naugle downplayed the incident and responded "There was no poisoning, that is misleading. There was an over the counter medication put in her drink." Defendant Naugle went on to say that the AICs responsible had a hearing process and that the state police did not press charges.

83.    On June 22, 2022, ODOC Staff Dunn emailed Defendant Ewell and ODOC Staff Josie Oleary to ask about the status of Plaintiff's case because Plaintiff continued to ask for charges to be filed against the AICs responsible for poisoning her and asked if local law enforcement needed to be contacted. Defendant Ewell responded that SIU was notified and would have contacted the state police.

84.    On June 23, 2022, Plaintiff submitted a Grievance Appeal stating she did not feel safe on her unit because she was still close to AIC McNair. Plaintiff stated that AIC McNair had provided the pitcher to AICs Rodgers and Kohl when they poisoned her.

85.    On July 5, 2022, the Grievance Appeal was returned to Plaintiff as beyond the scope of the original grievance.

86.    On July 6, 2022, Plaintiff submitted another Grievance Appeal in which she reiterated that she did not feel safe on her unit because AIC McNair was there. The Grievance Appeal was returned for correction on July 14, 2022.

87.    On July 11, 2022 and July 14, 2022, AICs Rodgers and Kohl had administrative hearings where they admitted to their roles in poisoning Plaintiff.

88.    On July 11, 2022, Defendant Naugle responded to Plaintiff's July 7, 2022 grievance, in which she had asked for an update on the investigation into the poisoning so she could file outside criminal charges. Plaintiff asked why no one had come to talk to her about the

PAGE 16 – **COMPLAINT**

incident. Defendant Naugle responded that the investigation was completed that day and that the AICs would be disciplined.

89.     On July 12, 2022, ODOC Dr. Rose noted that Plaintiff continued to have unpredictable diarrhea "as she recovers from documented poisoning by a peer."

90.     On July 12, 2022, over a month later, Plaintiff received the response to her June grievance regarding pain treatment following the poisoning. Defendant Andero responded to Plaintiff's Grievance stating the hospital had not mentioned pain medication in Plaintiff's discharge notes. Defendant Andero's response was dated June 15, 2022 but had not been accepted and sent back to Plaintiff until July 12, 2022.

91.     On July 15, 2022, Plaintiff submitted another Move Request Form asking to move.

92.     On July 20, 2022, Defendant Ervin responded there were no bunks currently available.

93.     On July 21, 2022, Plaintiff was unable to sleep due to diarrhea and "huge pains" in her abdomen. She had not been feeling right since she had been hospitalized. Plaintiff sent a kyte to ODOC Medical explaining she had pain in her lower abdomen and liquid-like diarrhea. Medical responded that Plaintiff had an appointment the next day.

94.     As of August 23, 2022, Plaintiff was having night terrors partly due to her poisoning.

95.     On September 12, 2022, Plaintiff was finally moved from unit 400 to unit 100. In being moved to the new unit 100, which was a lower incentive level, Plaintiff lost her job and was forced to forfeit her TV privileges. Her new bunk was in the loudest part of the unit. Plaintiff

PAGE 17 –**COMPLAINT**

had a panic attack. Plaintiff sent a kyte to Defendant Ervin asking why she was moved out of her entire unit instead of simply to a different bunk, and asked to be moved back to unit 400 to one of the other bunks.

96.    On September 14, 2022, Defendant Ervin responded that the move was "necessary" but did not explain why, or why it had taken so long for a "necessary" move to take place. Plaintiff submitted a Move Request Form and stated she was having a "huge panic attack," that she had lost all of her peer support as a result of the move, and she had lost her job.

97.    On information and belief, ODOC's sudden transfer of Plaintiff from incentive unit 400 to unit 100 was retaliation for Plaintiff's grievances and persistent requests for disability accommodation and medical care relating to her medical condition and being poisoned.

98.    On September 16, 2022, Plaintiff was moved back to unit 400. Plaintiff sent a kyte to Defendant Ervin to request that her bunk be "locked in" so she would not be moved in the future.

99.    On September 19, 2022, Defendant Ervin responded that he had locked in her bunk but Plaintiff could still be moved if an urgent need arose in the future.

100.    On September 25, 2022, Plaintiff began having rectal bleeding and "huge pain" in her abdomen. She was unable to work.

101.    On September 26, 2022, Plaintiff went to ODOC Medical experiencing extreme pain and rectal bleeding.

102.    By September 30, 2022, Plaintiff was still unable to return to work because she needed to use the bathroom so frequently.

PAGE 18 – **COMPLAINT**

103.    On October 1, 2022, Plaintiff experienced abdominal pain so severe she vomited. She went to ODOC Medical around 9:00 PM that night.

104.    On October 2, 2022, Plaintiff's symptoms continued and she received an injection for pain treatment.

105.    On October 3, 2022, Plaintiff's pain symptoms persisted and she was seen by Defendant Deena Lozier. Defendant Lozier refused to provide any treatment for Plaintiff's pain.

106.    On October 5, 2022, Plaintiff awoke from sleep due to abdominal pain. Plaintiff went to ODOC Medical but staff refused to provide any pain medication.

107.    On October 14, 2022, Special Investigations Unit ("SIU") Inspector Melissa Harvey signed an Investigative Report regarding Plaintiff's poisoning. The report included transcripts of a phone call from May 29, 2022 in which an AIC called someone outside of prison. The AIC stated that the poisoning had happened "multiple times over the last month" and that laxatives and blood pressure pills were involved. The SIU report included another transcript from a redacted AIC's phone call to an unknown person in which the AIC stated "How was I supposed to know it was prescription medication?" The unknown caller asked how the AIC got it and the redacted AIC responded "I read it to you, mom."

108.    On information and belief, AIC Rodgers had a history of poisoning or otherwise involuntarily intoxicating individuals.

109.    On information and belief, AIC Rodgers' mother worked or had worked in a pharmacy.

110.    On October 13, 2022, the Oregon Department of Administrative Services acknowledged receipt of Plaintiff's Tort Claims Act notice.

PAGE 19 –**COMPLAINT**

111.    On November 20, 2022, Plaintiff submitted a Grievance Form against Medical. She stated that she had been having rectal bleeding for months, that her kytes regarding the rectal bleeding had been ignored, that her doctor's appointments were rescheduled, and that she wanted to see a specialist.

112.    On November 21, 2022, Plaintiff's Grievance Form was received. It was accepted on December 6, 2022.

113.    On December 13, 2022, Plaintiff submitted a Grievance Form against Medical. She stated that her rectal bleeding had been ongoing for more than three months. She stated that by the time she was seen by Defendant Lozier, they were not able to schedule her for a colonoscopy because she was going to be released from ODOC custody shortly.

114.    The Grievance Form was received on December 14, 2022 and accepted on December 15, 2022.

115.    On January 1, 2023, ODOC Nurse V. Brady filed a Grievance Response Form, but it was not accepted and sent until February 1, 2023, after Plaintiff had been released.

116.    On January 18, 2023, Plaintiff was released from ODOC custody.

117.    Defendant Lori Schain did not respond to Plaintiff's November 21, 2022 medical grievance until February 22, 2023, more than a month after Plaintiff's release from ODOC custody.

118.    Plaintiff continued to experience pain and medical complications after release.

## FIRST CLAIM FOR RELIEF

### Violation of 42 U.S.C. § 1983 – 8th Amendment Failure to Protect

### (Against Defendants Ewell, Cooley, Breen, Naugle, Yonally, Bruns, Ervin, and Does 1-5)

PAGE 20 – **COMPLAINT**

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

119.    Plaintiff reallages all previous paragraphs.

120.    At all relevant times, Defendants Ewell, Cooley, Breen, Naugle, Yonally, Bruns, Ervin, and Does 1-5 were acting under color of law.

121.    Defendant Ewell, Cooley, Breen, Naugle, Yonally, Bruns, and Ervin violated the United States Constitutions' Eighth Amendment prohibition against cruel and unusual punishment by failing to protect Plaintiff from harassment and poisoning by other AICs.

122.    Defendants made intentional decisions with respect to the condition under which Plaintiff was confined including:

 i. Denying Plaintiff's multiple verbal requests to move to a safer location after she reported that she feared for her safety because other AICs in her housing unit were harassing her;

 ii. Refusing to move Plaintiff to a safer location after ODOC staff member Adrian Wulff emailed Defendant Ewell and Scott Haynes on March 28, 2022 to report that Plaintiff was being targeted and having conflicts with other AICs in her housing unit, she grounds for an incentive move, and had requested to be moved to a safer location, and that Wulff was concerned the situation would escalate;

 iii. Refusing to move Plaintiff to a safer location after she reported to ODOC staff that another AIC in her housing unit, AIC Rodgers, had planted a bottle of Enulose laxatives in Plaintiff's bed because AIC Rodgers was harassing Plaintiff and AIC Rodgers knew of Plaintiff's medical vulnerability posed by her pre-existing health condition and disability; and

PAGE 21 – **COMPLAINT**

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

  iv. Refusing to move Plaintiff to a safer location after other AICs in her housing unit submitted numerous unfounded and harassing complaints against Plaintiff targeting her disabling medica condition.

123. Defendants knew or should have known that failing to move Plaintiff to a safer location put Plaintiff at a substantial risk of suffering serious harm relating to her vulnerable and disabling medical condition by the AICs in her housing unit who had been harassing her for months and had knowledge of her medical condition.

124. The harassment Plaintiff experienced by other AICs in her housing unit was escalating because Defendants would not take action to move Plaintiff to a safer location or otherwise protect Plaintiff and take her stated concerns seriously.

125. Plaintiff was at all times an adult in custody subject ot the complete control and care of ODOC and its employees and agents, including Defendants.

126. Defendants did not take reasonable available measures to abate the risk to Plaintiff posed by other AICs in her housing unit harassing Plaintiff, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the Defendant's conduct obvious by:

  a. Failing to move Plaintiff to a safer location;

  b. Failing to move AIC Rodgers or AIC Kohl to a different location after Plaintiff reported she was being harassed by AICs including Rodgers and Rodgers' associates;

  c. Failing to investigate or address Plaintiff's concerns about the harassment she was experiencing by other AICs in her housing unit;

PAGE 22 – **COMPLAINT**

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

    d.   Failing to move Plaintiff to a different bunk after staff member Adrian Wulff reiterated that Plaintiff was being harassed by other AICs in her housing unit and had been requesting to move to a safer location; and

    e.   Failing to monitor Plaintiff's bunk after she reported that AIC Rodgers had planted a bottle of laxatives there while Plaintiff was being harassed and targeted by AICs.

127.   Defendants knew or should have known that failing to investigate and act on Plaintiff's complaints of harassment by other AICs in her housing unit would have led to a substantial risk of serious harm because Defendants were or should have been aware of Plaintiff's medical condition and Plaintiff reported the harassment and expressed concern for her safety, that the other AICs on her housing unit knew of Plaintiff's medical conditions and that she was vulnerable due to her medical condition, that the harassment was increasing in severity from verbal harassment to planting laxatives in her bunk which are particularly dangerous to Plaintiff due to her pre-existing medical conditions, and that the targeted campaign to file complaints against Plaintiff could evolve to physical attacks.

128.   As a result of Defendants' conduct of refusing to move Plaintiff to a safer location or otherwise investigate and abate the obvious risk being posed to Plaintiff, Plaintiff was poisoned by at least AICs Rodgers and Kohl inside Plaintiff's bunk area, with apparent assistance from additional AICs including Plaintiff's bunkmate AIC Crista McNair.

129.   As a result of the poisoning, Plaintiff was hospitalized and suffered significant medical harms including ongoing pain and suffering, anxiety, fear, nightmares, humiliation, and loss of enjoyment of life, experienced retaliation, lived in fear of continued harassment and

PAGE 23 – **COMPLAINT**

further assault, and lived in fear of physical and potentially life-threatening retaliation for which she is entitled to be compensated in an amount to be determined.

130.    Plaintiff continues and will experience in the future the emotional distress, fear, anxiety, and harms and losses resulting from the poisoning and Defendants' violations of her constitutional rights. As a result of Defendants' conduct, Plaintiff seeks an award of economic damages for her future medical and mental health expenses in an amount to be determined.

131.    Accordingly, Plaintiff is entitled to compensatory damages against the individual Defendants for the violations of 42 U.S.C. § 1983, in an amount to be determined at trial.

132.    Defendants' acts in failing to protect Plaintiff were willful and intentional. Defendants should be assessed punitive damages in an amount to be determined by a jury.

133.    Plaintiff seeks an award of reasonable attorney fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 1988(b).

134.     Plaintiff is entitled to a prevailing party fee, her costs and disbursements.

## SECOND CLAIM FOR RELIEF

## Violation of 42 U.S.C. § 1983 – 8th Amendment Failure to Provide Medical Care

## (Against Defendants Andero, Prewitt, Lozier, Schain, and Does 1-5)

135.    Plaintiff re-alleges all previous paragraphs.

136.    At all relevant times, Defendants Andero, Prewitt, Lozier, Schain, and Does 1-5 were acting under the color of law.

137.    Defendants violated the United States Constitutions' Eighth Amendment prohibition against cruel and unusual punishment by failing to provide Plaintiff with adequate

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

and appropriate medical care after she was poisoned and after she began bleeding from her rectum.

138.    Plaintiff faced a serious medical need because:

a.    Plaintiff has Hirschsprung's disease, a genetic condition that affects the large intestine;

b.    Plaintiff was poisoned over a period of at minimum three days in May of 2022 and possibly longer;

c.    Following the poisoning, Plaintiff experienced dizziness and uncontrollable bowel movements;

d.    Plaintiff was hospitalized due to extreme pain from full bowel blockage from May 27, 2022 until May 31, 2022 after it was known she had been poisoned;

e.    Plaintiff continued to experience pain in her abdomen after she was released from the hospital; and

f.    Plaintiff had unexplained rectal bleeding for over three months beginning on or around September 26, 2022.

139.    The Defendants were deliberately indifferent to Plaintiff's serious medical needs, including Plaintiff's multiple written and verbal requests for medical care for the conditions and symptoms listed above.

140.    The Defendants knew or should have known of Plaintiff's serious medical needs because:

g.    Plaintiff has suffered from Hirschsprung's disease, a genetic condition that affects the large intestine, since birth;

PAGE 25 –**COMPLAINT**

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

h.  On August 6, 2022, Plaintiff completed an intake health assessment where she reported she had chronic diarrhea;

i.  On May 18, 2022 Corporal Bataz confirmed that AIC Rodgers and AIC Kohl and put crushed medication of some kind in Plaintiff's pitcher from May 12, 2022 to May 15, 2022 as shown on ODOC video footage of Plaintiff's bunk and he reported this information to Officer De La O;

j.  The video footage showed that shortly after Plaintiff drank from the poisoned pitcher, she had uncontrollable bowel movements;

k.  On May 25, 2022, Plaintiff reported that she had severe abdominal pain and she was taken to the hospital;

l.  On May 27, 2022, Plaintiff reported that she had severe abdominal pain again and that she could barely walk due to the pain;

m.  Plaintiff was hospitalized from May 27, 2022 to May 31, 2022 due to a full blockage in her intestines;

n.  On June 1, 2022, Plaintiff informed ODOC Medical that she was still in pain;

o.  On June 2, 2022, Plaintiff informed Defendant Prewitt she was still in pain during an appointment;

p.  On June 4, 2022, Plaintiff asked to see ODOC Medical because she was still in pain;

q.  On June 5, 2022, Plaintiff sent an AIC Communication Form to ODOC Medical asking for help due to severe pain in her stomach;

PAGE 26 –**COMPLAINT**

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

r.  On June 7, 2022, ODOC medical care provider Judy Rose, MD reported in her visit notes that Plaintiff's bowels were still not back to normal after her hospitalization;

s.  On July 12, 2022, Judy Rose, MD reported in her visit notes that Plaintiff continued to have unpredictable diarrhea "as she recovers from documented poisoning by a peer";

t.  On September 26, 2022, Plaintiff saw ODOC Medical due to rectal bleeding and stomach pain;

u.  On September 30, 2022, Plaintiff was forced to leave her program orderly job due to experiencing continuous, untreated, uncontrollable diarrhea;

v.  On October 2, 2022, Plaintiff saw ODOC Medical due to diarrhea and abdominal pain;

w.  On October 3, 2022, Plaintiff saw Dr. Lozier due to pain;

x.  On October 5, 2022, Plaintiff went to ODOC Medical due to pain and diarrhea;

y.  On October 11, 2022, Judy Rose, MD wrote in her notes that Plaintiff continued to have dietary issues due to a documented poisoning;

z.  On November 20, 2022, Plaintiff submitted a Grievance Form against ODOC Medical requesting to see a specialist because she had been having rectal bleeding for months and she was unable to visit ODOC Medical because her doctor appointments were rescheduled; and

aa. On December 1, 2022, ODOC care provider Dr. Evetts recommended Plaintiff get a colonoscopy to determine the cause of the rectal bleeding.

PAGE 27 – **COMPLAINT**

141.    Defendants disregarded Plaintiff's serious medical need and failed to take reasonable measures to address it by:

    a.  Refusing to schedule a CBC work up on May 22, 2022 after Plaintiff requested one due to being poisoned;

    b.  Failing to bring Plaintiff to ODOC Medical on May 22, 2022 after she reported being dizzy, panicked, experiencing insomnia, and having bad diarrhea;

    c.  Failing to give Plaintiff pain medication when she returned from the hospital after her full bowel blockage on May 31, 2022, despite Plaintiff's discharge documents prescribing pain medication Oxycodone;

    d.  Failing to respond to Plaintiff's June 1, 2022 Grievance regarding access to pain medication until June 15, 2022;

    e.  Refusing to bring Plaintiff to CCCF medical on June 5, 2022 when she had severe pain in her abdomen just days after returning from the hospital for a full bowel blockage;

    f.  Failing to examen or provide medical care to Plaintiff when she started bleeding from her rectum in September 2022;

    g.  Rescheduling doctor appointments that were scheduled to address Plaintiff's persistent rectal bleeding;

    h.  Failing to respond to Plaintiff's November 20, 2022 Grievance regarding her request to see a specialist for her rectal bleeding until February 22, 2023, which was after Plaintiff was released from prison; and

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

i. Failing to respond to Plaintiff's December 13, 2022 grievance regarding her request to get a colonoscopy for her rectal bleeding until February 1, 2023, which was after Plaintiff was released from prison.

142. Defendants' actions and failure to act caused harm to Plaintiff including:

a. Physical pain and suffering when Defendants refused to give Plaintiff pain medication following her hospitalization for a painful full bowel blockage;

b. Prolonged rectal bleeding due to Defendant's failure to examine and treat Plaintiff's rectal bleeding;

c. Prolonged diarrhea due to Defendant's failure to examine and treat Plaintiff's symptoms;

d. Economic losses from having to leave her employment due to untreated and continuous diarrhea;

e. Emotional distress including anxiety, loss of sleep, and stress due to Plaintiff's worry about serious medical complications following Defendant's refusal to do a full CBC workup following her poisoning; and

f. Emotional distress including anxiety, loss of sleep, and stress due to Plaintiff's worry about serious medical complications following Defendant's refusal to examine and perform a colonoscopy due to Plaintiff's prolonged rectal bleeding.

143. Defendants Andero, Prewitt, Lozier, Schain, and Does 1-5, while acting under color of law, deprived Plaintiff of her civil rights under the Eight Amendment by failing to provide her with adequate and appropriate medical care following her poisoning and after she started experiencing persistent pain and rectal bleeding for more than three months.

PAGE 29 – **COMPLAINT**

144.    Defendants Andero, Prewitt, Lozier, Schain, and Does 1-5 knew or should have known that failing to provide Plaintiff with adequate and appropriate medical care would result in the violation of Plaintiff's constitutional rights.

145.    As a result of Defendants Andero, Prewitt, Lozier, Schain, and Does 1-5's conduct violating Plaintiff's rights, Plaintiff lived in fear of potentially life-threatening medical complications, and suffered harms and losses.

146.    Plaintiff continues to suffer from severe anxiety, fear, nightmares, and loss of enjoyment of life, and the costs to treat such conditions, for which she is entitled to be compensated in an amount to be determined.

147.    Plaintiff continues and will experience in the future the emotional distress and harms and losses resulting from Defendants' failure to provide adequate and appropriate medical care and Defendants' violations of her constitutional rights. As a result of Defendants' conduct, Plaintiff seeks an award of economic damages for her future medical and mental health expenses in an amount to be determined.

148.    Accordingly, Plaintiff is entitled to compensatory damages against the individual Defendants for the violations of 42 U.S.C. § 1983, in an amount to be determined at trial.

149.    Defendants' acts in failing to protect Plaintiff were willful and intentional. Defendants should be assessed punitive damages in an amount to be determined by a jury.

150.    Plaintiff seeks an award of reasonable attorney fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 1988(b).

151.    Plaintiff is entitled to a prevailing party fee, costs and disbursements.

### THIRD CLAIM FOR RELIEF

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

**Violation of Americans with Disabilities Act and § 504 of the Rehabilitation Act**

**(Against Defendant ODOC)**

152.    Plaintiff re-alleges all previous paragraphs.

153.    Defendant ODOC is subject to § 504 of the Rehabilitation Act's mandate, requiring recipients of federal funds to reasonably accommodate persons with disabilities inside their facilities, program activities, and services, and reasonably modify such facilities, services, and programs to accomplish this purpose.

154.    Title II of the ADA and § 504 of the Rehabilitation Act have essentially the same mandate.

155.    Defendant ODOC is subject to Title II of the ADA because it is a public entity within the meaning of Title II as an agency of State or local government.

156.    At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of Title II of the ADA and was in the custody of ODOC.

157.    Specifically, Plaintiff suffered from Hirschsprung's disease which substantially limits one or more major life activities including but not limited to major bodily functions including functions of the digestive and bowel functions.

158.    ODOC is a State agency that is responsible for operating prisons, including CCCF, and is therefore a public entity for § 504 and Title II purposes.

159.    Under the ADA and Rehabilitation Act, ODOC and its employees are required to accommodate disabled citizens, including citizens with physical disabilities of the digestive tract, the same level of access to services as those who are not disabled. They are also required to make

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

reasonable modifications in polices, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.

160.    ODOC was deliberately indifferent in failing to provide Plaintiff with reasonable accommodations by reason of her disabilities in violation of the ADA and Rehabilitation Act by:

      a.    Failing to move Plaintiff to a safer location after Plaintiff reported that AIC Rodgers had planted laxatives in her bunk when AIC Rodgers knew of Plaintiff's disabilities;

      b.    Failing to provide Plaintiff access to clean clothing and access to laundry facilities when she was experiencing uncontrollable bowel movements which soiled her clothing; and

      c.    Failing to provide Plaintiff access to treatment and prescribed medications for her disability condition, including pain medication which had been prescribed by hospital staff after Plaintiff was poisoned.

161.    As a direct and proximate result of Defendants' foregoing wrongful acts, Defendants discriminated against Plaintiff on the basis of her disability in violation of the Americans with Disabilities Act and Rehabilitation Act, causing her to suffer pain, humiliation, fear, frustration, poisoning, an obstructed bowel requiring subsequent hospitalization, and bloody bowel movements, anxiety, stress, and loss of dignity.

162.    Accordingly, Plaintiff is entitled to economic and non-economic damages in an amount to be determined at trial.

PAGE 32 – **COMPLAINT**

163.    Defendants' acts in failing to reasonably accommodate Plaintiff were willful and intentional. Defendants should be assessed punitive damages in an amount to be determined by a jury.

164.    Plaintiff seeks an award of reasonable attorney fees and costs incurred in bringing this action pursuant to 42 U.S.C. §§ 12205.

165.     Plaintiff is entitled to a prevailing party fee, costs and disbursements.

## FOURTH CLAIM FOR RELIEF

### Professional Negligence – Vicarious Liability

### (Against Defendant ODOC)

166.    Plaintiff realleges all previous paragraphs.

167.    As Correctional Officers and ODOC employees, Defendants Ewell, Cooley, Breen, Naugle, Yonally, Bruns, Ervin, and Does 1-5 owed Plaintiff a duty of care to provide for the custody, control, supervision, and daily care of Plaintiff and to protect Plaintiff from harm from other AICs.

168.    As medical providers, Defendants Andero, Prewitt, Lozier, Schain, and Does 1-5 owed Plaintiff a duty of care to provide Plaintiff adequate medical care.

169.    Defendants Cooley, Breen, Naugle, Yonally, Bruns, Ervin, and Does 1-5 breached the standard of care of correctional officers by using their professional position of authority over Plaintiff to refuse to move her to a safer location when both Plaintiff and ODOC staff member Adrian Wulff asked them to move her to a safer location due to the harassment she was experiencing from other AICs in her housing unit.

PAGE 33 –**COMPLAINT**

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

170.     Defendants Andero, Prewitt, Lozier, Shain, and Does 1-5 breached the standard of care of correctional medical staff by failing to provide Plaintiff with pain medication immediately following her hospitalization for a full bowel blockage, for rescheduling and failing to treat Plaintiff's medical appointments when she was experiencing persistent rectal bleedings, for failing to perform a colonoscopy to identify the cause of her rectal bleeding, and for failing to respond to Plaintiff's Grievances regarding her inadequate medical for months and after she was released from prison.

171.     Defendant State of Oregon is vicariously liable for the individual Defendants' conduct, because their conduct was within the course and scope of their employment, in that their conduct occurred within the time and space limits authorized by their employment with Defendant State of Oregon as Correctional Officers, prison employees, and correctional medical professionals, and they were on duty performing duties hired to perform, and that conduct resulted in the acts that injured Plaintiff.

172.     As a result of Defendant's conduct, Plaintiff suffered and continues to suffer anxiety, fear, nightmares, loss of enjoyment of life, and will suffer further emotional distress for which he is entitled to compensated in an amount to be determined.

173.     Plaintiff provided the State of Oregon with a timely Tort Claims Notice.

174.     As a further result of Defendant's conduct, Plaintiff seeks an award of economic and non-economic damages for her future medical and mental health expenses in an amount to be determined at trial.

175.     Plaintiff is entitled to a prevailing party fee, her costs and disbursements.

PAGE 34 – **COMPLAINT**

## FIFTH CLAIM FOR RELIEF

### Negligence

### (Against Defendant ODOC)

176.    Plaintiff realleges all previous paragraphs.

177.    ODOC owes Plaintiff a higher standard of care because of the nature of incarceration. As a ward of the State, ODOC managed all aspects of Plaintiff's care. Had Plaintiff been a free person, she would have been able to move to a safer location to avoid other AICs in her housing unit, protected herself from the harassment, and obtained adequate medical care following her poisoning. However, as an incarcerated person, Plaintiff's pleas for protection against other AICs in her housing unit and her health care were ignored. ODOC voluntarily took the custody of Plaintiff under circumstances such as to deprive her of normal opportunities for protection and health care, and created a non-delegable duty to ensure that Plaintiff was safe. ODOC did not meet its obligation to protect and care for Plaintiff.

178.    ODOC was negligent in exposing Plaintiff to foreseeable risk as alleged in prior paragraphs above.

179.    ODOC failed to use reasonable care in the ways alleged in paragraphs above, including but not limited to:

a.    Failing to timely and appropriately move Plaintiff to a safer location after she reported for months that she was being harassed by other AICs in her housing unit. ODOC's conduct was negligent;

b.    Failing to prescribe Plaintiff pain medication while she was in extreme pain following her hospitalization for a full bowel blockage,

PAGE 35 – **COMPLAINT**

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934

    c.   Failing to perform a full CBC workup following her poisoning, and

    d.   Failing to examen and perform a colonoscopy on Plaintiff after she began experiencing persistent rectal bleeding for months, all as alleged above.

180.   ODOC's conduct was negligent.

181.   ODOC's conduct was unreasonable in light of the risk of harm to Plaintiff.

182.   As a consequence of ODOC's negligence, Plaintiff suffered economic damage in the form of lost wages as well as severe physical and mental pain and suffering, including damage in the ways described in paragraphs alleged above.

183.   ODOC knew or should have known that failing to move Plaintiff to a safer location would cause Plaintiff to experience more and escalating harassment by other AICs in her housing unit and would cause Plaintiff to suffer harm and severe mental pain and suffering. The harm Plaintiff suffered due to ODOC's negligence was reasonably foreseeable.

184.   ODOC knew or should have known that failing to provide Plaintiff with pain medication following her hospitalization for a full bowel blockage, failing to perform a full CBC workup following her poisoning, and failing to examen her and perform a colonoscopy after she began experiencing persistent rectal bleeding for months would cause Plaintiff to suffer harm and severe mental pain and suffering. The harm Plaintiff suffered due to ODOC's negligence was reasonably foreseeable.

185.   Plaintiff provided the State of Oregon with a timely Tort Claims Notice.

186.   ODOC's conduct was a substantial factor in causing harm to Plaintiff.

187.   As a result of ODOC's conduct, Plaintiff suffered economic and non-economic damages in an amount to be proved at trial, including as alleged in paragraphs above.

PAGE 36 – **COMPLAINT**

188.    Plaintiff is entitled to a prevailing party fee, her costs and disbursements.

**DEMAND FOR JURY TRIAL**

189.    Plaintiff Bender demands a jury trial on all issues so triable.

**WHEREFORE**, Plaintiff prays for the following relief:

a.    For a declaration Defendants Ewell, Cooley, Breen, Naugle, Yonally, Bruns, Ervin, Andero, Prewitt, Lozier, Schain, and Does 1-5 violated her constitutional rights;

b.    For judgment in favor of Plaintiff and against Defendants;

c.    For general and compensatory damages in an amount according to proof;

d.    For special damages in an amount according to proof;

e.    For exemplary and punitive damages against each individual Defendant;

f.    For an award of economic damages for her past and future medical and mental health expenses in an amount to be determined;

g.    For reasonable attorney fees and costs incurred in bringing this case;

h.    For prevailing party fees and disbursements; and

i.    For such other and further relief as this Court finds just, equitable, and appropriate.

DATED:  March 28, 2024

LEDUC MONGOMERY LLC

By: *s/Alicia LeDuc Montgomery*
   **Alicia LeDuc Montgomery, OSB #173963**
   alicia@leducmontgomery.com
   (704) 702-6934

Attorneys for Plaintiff Amy Bender

PAGE 37 – **COMPLAINT**

**LeDuc Montgomery LLC**
2210 W Main St., Suite 107 #328
Battle Ground, Washington 98604
(704) 702-6934
